_____

JENNY JOHNSON,

      Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

      Defendant.
_____

18-CV-0507-MJR

DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 15)

Plaintiff Jenny Johnson ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 9) is denied and defendant's motion (Dkt. No. 13) is granted.

## BACKGROUND

Plaintiff filed an application for DIB on January 23, 2015 alleging disability since August 28, 2014 due to back and neck pain, asthma, degenerative disc disease, temporomandibular joint dysfunction, migraines, anxiety, depression, gastroesophageal

---

[1] The Clerk of Court is directed to amend the caption accordingly.

reflux disease, and stomach ulcer. (*See* Tr. 89-98, 173-74)[2] Plaintiff's disability benefits application was initially denied on April 8, 2015. (Tr. 89-98) Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Timothy McGuan on June 7, 2017. (Tr. 68-88) The ALJ heard testimony from plaintiff, who was represented by counsel, and from Vocational Expert ("VE") Jay Steinbrenner. (*Id.*)

On September 29, 2017, the ALJ issued a decision that plaintiff was not disabled under the Act. (Tr. 13-34) Plaintiff timely sought review of the decision by the Appeals Council, which denied her request for review. (Tr. 1-7, 168) The ALJ's September 29, 2017 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed. (Dkt. No. 1)

Plaintiff was 42 years-old on the date of the ALJ's decision, completed two years of college, and had past work as a certified nurse's aide, medical assistant, and receptionist. (Tr. 83-84, 173, 194) She alleges disability stemming from injuries she sustained in a car accident in November, 2012, including neck pain, back pain, and migraine headaches. (Tr. 71, 198, 278) Plaintiff has not worked since her alleged onset date of August 28, 2014. (Tr. 70-71)

The issue before this Court is whether there was substantial evidence to support the ALJ's decision that plaintiff was not under a disability, as defined by the Act, between August 28, 2014 through September 26, 2017.

---

[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 6)

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that

work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ first found that plaintiff met the insured status requirements of the Act through December 31, 2019. (Tr. 18) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since August 28, 2014, the alleged onset date. (*Id.*) At step two, the ALJ found that, during the relevant time period, plaintiff had severe impairments consisting of: (1) obesity, status-post gastric bypass surgery in November 2016; chronic migraines; cervicalgia and myofascial pain; lumbago; and C4-5 disk bulge

with mild spinal stenosis.[3] (Tr. 18-19) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except that she required a sit and stand option every 45 minutes, could frequently interact with others, and could frequently do complex and detailed tasks. (Tr. 21)

At step four, the ALJ concluded, based upon the testimony of VE Steinbrenner, that plaintiff could perform her past relevant work as a receptionist because the past work did not require the performance of work-related activities precluded by plaintiff's RFC. (Tr. 28) Accordingly, the ALJ did not proceed to step five and concluded that plaintiff was not disabled as defined in the Act. (*Id.*)

IV.  *Plaintiff's Challenges*

A.  Severity Analysis

Plaintiff first argues that the ALJ failed to find her asthma, allergies, depression, and anxiety to be severe impairments. Alternatively, even if the severity finding was correct, those non-severe impairments were not properly reflected in the RFC. (*See* Dkt. No. 9-1 (Plaintiff's Memorandum of Law) at 18-21) Therefore, plaintiff contends that the RFC was not supported by substantial evidence. (*Id.*)

Social Security regulations provide that an impairment will be found "not severe" if the medical evidence establishes only a slight abnormality or combination of slight abnormalities, which would have no more than a minimal effect on an individual's ability

---

[3] Also at step two, the ALJ found that plaintiff's medically determinable impairments of asthma, seasonal allergies, depression, and anxiety did not have more than a minimal effect on her ability to work and were therefore was non-severe. (Tr. 18-19)

7

to perform physical or mental basic work-related activities. 20 C.F.R. § 404.1521(a); Social Security Ruling ("SSR") 85-28, 1985 WL 56856. Basic work-related physical activities include walking, standing, sitting, reaching, carrying, hearing, seeing, and speaking. 20 C.F.R. § 404.1521(b). Mental activities include understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting. 20 C.F.R. § 404.1521(c).

It is the plaintiff's burden to provide medical evidence demonstrating the severity of her condition. *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 142 n.5 (1987); *Miller v. Comm'r of Soc. Sec.*, No. 05–CV–1371, 2008 WL 2783418, at *6–7 (N.D.N.Y. July 16, 2008).

Here, the ALJ discussed the evidence related to Plaintiff's depression and anxiety and concluded they did not cause more than minimal limitation in her ability to perform basic mental work activities, and were, therefore, not severe. (Tr. 18-19) In doing so, the ALJ identified the four broad areas of mental functioning as set forth in the disability regulations and explained his reasoning for his findings in each area. (Tr. 19); *see* 20 C.F.R. § 416.920a.

The record reveals that Plaintiff underwent an initial psychiatric evaluation for depression in November 2014, and attended only four follow-up appointments between 2014 and 2017. At her initial examination, Plaintiff was oriented, calm, cooperative, and interactive and had appropriate eye contact, normal speech, fair memory, intact judgment and insight, and organized and goal directed thought processes. (Tr. 921) These findings were unchanged at each of her next four visits. (Tr. 911, 914, 917-18, 1268-269) Likewise, plaintiff's other treating physicians noted unremarkable examination findings,

including normal mood, appropriate affect, normal memory and attention, clear and appropriate thought processes, and normal speech. (Tr. 281, 291, 387, 572, 601, 606, 613, 615, 619, 628, 631, 654, 673, 741, 851, 875, 884, 899, 904, 924, 927, 930, 933, 937, 944, 1202, 1205, 1239) Such normal mental examination findings supported the ALJ's conclusion that Plaintiff's depression and anxiety were not severe. *See, e.g., Monica A. D. v. Berryhill*, No. 18-CV-660, 2019 WL 2502709, at *9 (N.D.N.Y. June 17, 2019) ("Plaintiff's medical records also support the ALJ's conclusion that her arthritis, GERD, and headaches are nonsevere impairments").

In addition, the consultative psychologist assessed plaintiff with major depressive disorder and panic disorder with no limitation in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others, and mildly limited in her ability to maintain attention and concentration and appropriately deal with distress because of distractibility. (Tr. 731-35) The ALJ afforded this opinion great weight. (Tr. 27) Plaintiff, in contrast, has not cited any evidence in the record that her mental limitations that would impact her ability to work more than minimally. *See, e.g., Quiles v. Colvin*, No. 13cv1905, 2015 WL 13729877 at *11-12 (evidence in the record that plaintiff had history of carpal tunnel syndrome and depression, but no evidence that those conditions resulted in functional limitations).

On this record, ALJ's severity determination with respect to plaintiff's mental health issues is supported by substantial evidence. *See Del Carmen Rojas v. Berryhill*, No. 17CV6788, 2019 WL 2453342, at *24 (S.D.N.Y. Jan. 30, 2019), *report and*

*recommendation adopted sub nom. Rojas v. Berryhill*, 368 F. Supp. 3d 668 (S.D.N.Y. 2019) ("Taken together, Plaintiff's own testimony, the [medical] records, and [the] consultative report provide substantial evidence to support these findings, and thus the ALJ's determination that Plaintiff's mental impairment was non-severe should not be disturbed.") Moreover, the Court disagrees with plaintiff's alternative argument that the ALJ failed to account for her non-severe psychiatric impairment in assessing the RFC, *see* Dkt. No. 9-1 at 20, because he specifically limited plaintiff to frequent interaction with others and complex tasks. (Tr. 21)

Plaintiff's argument that her asthma and allergies should have been found to be severe impairments fails for substantially the same reasons. (Dkt. No. 9-1 at 18-19) The record shows that plaintiff's asthma and seasonal allergies were generally well-controlled when compliant with medication; her examinations were normal; and a spirometry test was normal. (Tr. 406, 409-13, 612-13, 884, 906-07, 928, 931, 935, 938); *see, e.g., Santiago v. Colvin*, No. 12 Civ. 7052, 2014 WL 718424, at *13 (S.D.N.Y. Feb. 25, 2014) ("asthma controlled by an inhaler does not amount to a 'severe impairment' within the meaning of the Act"); *Lundy v. Massanari*, No. 01-CV-0102, 2001 WL 826707, at *5 (E.D.N.Y. July 10, 2001) (substantial evidence that plaintiff's asthma was not severe where plaintiff had no recent hospitalization or emergency room treatment and responded well to inhalers).

Plaintiff also contends that the ALJ erred failing to include environmental restrictions in his RFC assessment. (Dkt. No. 9-1 at 18-19; Tr. 21) She cites to *Parker-Grose v. Astrue*, 462 Fed. Appx. 16 (2d Cir. 2012), for the proposition an ALJ's step-two error is not harmless where an ALJ fails to take any restrictions into account when

determining claimant's RFC. In *Parker-Grose*, the circuit court determined that the ALJ's severity determination was not supported by substantial evidence because the evidence was "inconsistent" as to whether the plaintiff's depression significantly impaired her ability to do basic work activities. 462 Fed. Appx. at 18. Here, however, the record is devoid of evidence that plaintiff's asthma and allergies significantly impaired her ability to do basic work activities. *See Houle-Call v. Comm'r of Soc. Sec.*, No. 12-cv-1685, 2013 W L 6183856, at *2 (N.D.N.Y. Nov. 26, 2013) (ALJ did not err in assessing no limitations due to the plaintiff's asthma where "the record [was] devoid of any evidence indicating that [the plaintiff's] asthma diminished her ability to work."). In any event, plaintiff's past relevant work as a receptionist, which the ALJ determined that plaintiff could perform, does not require exposure to environmental irritants, such as fumes, odors, dusts, gases, and extreme heat or cold.[4] *See Samantha S. v. Comm'r of Soc. Sec.*, No. 18-CV-553, 2019 WL 2949224, at *8 (N.D.N.Y. July 9, 2019) ("it is hard to argue that the ALJ erred in failing to include environmental limitations in the RFC without first claiming that an underlying condition (such as asthma) was sufficiently "severe" to impose more than a "minimal effect" on a plaintiff's ability to work. This is especially so where, as here, the jobs identified by the VE and adopted by the ALJ do not require exposure to environmental conditions known to be challenging to asthmatics."); *see, also, e.g., Ortiz v. Colvin*, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018) (finding harmless error where including environmental limitations would not have changed the step five determination; collecting cases holding the same).

---

[4] *See* Dictionary of Occupational Titles ("DOT") 237.367–038.

11

Similarly, the ALJ's RFC finding, which did not explicitly account for plaintiff's use of a cane, was not deficient.[5] (Dkt. No. 9-1 at 21-23) Plaintiff reported using a prescribed cane for balance, weightbearing, and pain. The consultative examiner opined that it was medically necessary, and the ALJ afforded his opinion great weight. (Tr. 27, 723) During the administrative hearing, after accounting for plaintiff's cane usage, the VE testified that Plaintiff could perform her past relevant work as a receptionist. (Tr. 86) Thus, although the RFC did not explicitly discuss cane usage, the ALJ's conclusion is reflective of the VE's testimony, and the limitation to sedentary work is consistent with the use of a cane. *See, e.g., Zeler v. Comm'r of Soc. Sec.*, No. 17-CV-99, 2019 WL 210841, at *3 (W.D.N.Y. Jan. 16, 2019) ("the Commissioner correctly has pointed out that the finding of sedentary work is consistent with the use of a cane for walking that is a minor part of job duties.") (citing 20 C.F.R. § 416.967(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.")); *see also, e.g., Podolsky v. Colvin*, No. 12 CIV. 6544, 2013 WL 5372536, at *17 (S.D.N.Y. Sept. 26, 2013) ("while the use of a cane may impact the ability of a claimant to do light or medium work, there was substantial evidence in the record for the ALJ to have concluded that Podolsky could perform sedentary work with his cane."). Any error by the ALJ to impose an additional limitation regarding cane usage would be at most, harmless. *See Howze v. Barnhart*, 53 Fed. Appx. 218, 222 (3d Cir. 2002) ("Even if the ALJ erred regarding the cane, though, any error was harmless as he

---

[5] The parties do not appear to dispute that the cane is medically necessary. (Dkt. No. 91 at 22; Dkt. No. 13-1 at 12)

12

asked the vocational expert to take the cane into account and there were still jobs available that appellant could perform.").

Plaintiff also claims that the ALJ did not account for her migraine headaches in his RFC finding. (Dkt. No. 9-1 at 23-25) The record shows that plaintiff received trigger point and Botox injections for her migraine headaches and the treatment notes indicate that she reported consistent improvement. (Tr. 645, 659, 701, 707, 714, 745, 748, 753 756, 761, 1143, 1146, 1149, 1153, 1168, 1171, 1271, 1283, 1287, 1310, 1316) In December, 2016, plaintiff reported 28 headache-free days per month with Botox, no side effects, and 80% improvement. (Tr. 27, 1279) During the administrative hearing, plaintiff testified to having one migraine per month. (Tr. 72) None of the providers who treated plaintiff for headaches assessed any limitations resulting from her migraines. The consultative examiner, who heard plaintiff's complaints and diagnosed her with chronic migraines, opined that she had only mild restriction to bending, lifting, and carrying. (Tr. 725)

Thus, plaintiff has not identified any other medical evidence of record to support the conclusion that her migraines would cause additional limitations not accounted for in the ALJ's RFC assessment. To the contrary, and as the ALJ discussed in his decision, plaintiff's medical records show that the frequency of her migraines was well-managed with Botox treatment and that when she did experience a migraine, she was able to control it with medication. See Johnson v. Colvin, 669 Fed. Appx. 44, 46 (2d Cir. 2016) (ALJ reasonably considered a doctor's statement that plaintiff's medical condition had improved with treatment).

In determining the RFC, the ALJ thoroughly discussed Plaintiff's migraines. He reviewed Plaintiff's hearing testimony about her headaches and noted records

13

documenting treatment for them. (Tr. 22-27). In sum, the Court finds that the ALJ's assessment of the impact of Plaintiff's migraines was supported by substantial evidence, and the RFC fully accounted for all of Plaintiff's credible limitations.

B. Credibility Determination

Plaintiff also challenges the ALJ's credibility determination on the grounds that he failed to properly consider the regulations and mischaracterized the record. (Dkt. No. 9-1 at 25-30)

In determining a claimant's RFC, an ALJ must evaluate a claimant's subjective complaints and determine whether they are consistent with the record as a whole. *See* 20 C.F.R. § 404.1529(c)(4); SSR 96-7p, 1996 WL 374186; *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The Second Circuit has held that it is the function of the ALJ, and not the courts, to make determinations regarding a claimant's subjective complaints. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

The ALJ found that plaintiff's subjective complaints were not consistent with the objective medical evidence, noting that while plaintiff may experience some degree of pain and discomfort, mild to moderate pain or discomfort is not, in itself, incompatible with performing sustained work activity. (Tr. 27) His discussion of the medical evidence was comprehensive. (Tr. 22-26); *see* 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"). Plaintiff's examinations revealed full strength, intact sensation and reflexes, normal muscle bulk and tone, and normal coordination. (Tr. 705, 709, 724, 759, 937, 1151, 1157, 1177, 1185, 1205, 1239, 1246, 1281, 1292, 1296-297, 1301, 1304) An MRI of the brain dated March 3, 2017 was mildly abnormal, with findings that "may be seen in migraineurs or after head trauma, but

14

they may be encountered even in a subset of the general population. There is no acute abnormality." (Tr. 1299) As the ALJ observed, the brain MRI was "not really diagnostic." (Tr. 27) A lumbosacral spine MRI from March, 2017 was likewise mildly abnormal, indicating a disc protrusion with no nerve root compression, annular tear and disc bulge without foraminal or spinal stenosis, mild facet arthropathy and ligamentum flavum hypertrophy, and desiccation at L4-5 and L5-S1 with no spondylolisthesis or vertebral body compression. (Tr. 1262) The ALJ properly relied upon the clinical findings contained in the record. *See Lewis v. Colvin*, 548 Fed. Appx. 675, 678 (2d Cir. Dec. 17, 2013) (the ALJ's decision to discount a claimant's subjective testimony regarding his symptoms was appropriate where that testimony was not supported by the objective medical evidence or evidence regarding his daily activities).

The ALJ also considered Plaintiff's reports that injections helped her headaches, as discussed above, which discounted her claims of disabling migraines. (Tr. 27); *see* 20 C.F.R. § 404.1529(c)(3)(iv) (stating an ALJ must consider the effectiveness of treatment); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("Of course, a remediable impairment is not disabling."). Lastly, the ALJ properly took into consideration plaintiff's reported daily activities, which included cooking, doing cleaning and laundry, shopping, managing her own money, driving, taking public transportation, doing puzzles, caring for her pets, and going fishing. (Tr. 19, 733); *see* 20 C.F.R. § 404.1529(c)(3)(i) (stating an ALJ must consider a claimant's activities); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ may rely on such activities to show that a claimant's allegation that she was disabled was not consistent with the medical and other evidence); *Lewis*, 548 Fed. Appx. at 678.

Contrary to plaintiff's position, the ALJ considered several factors enumerated in 20 C.F.R. § 416.929(c) in determining the extent to which plaintiff's subjective complaints were consistent with the medical record. The Court need not disturb the credibility determination as it is supported by substantial evidence.

For all of the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error.

## CONCLUSION

Accordingly, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

SO ORDERED.

Dated: July 24, 2019
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge